Filed: May 19, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 98-2666(L)
(CA-91-8-3-10)

Drive-In Music Company, Incorporated,

Intervenor - Appellant,

versus

Ronald B. Killette, et al,

Defendants - Appellees.

O R D E R

The court amends its opinion filed April 20, 2000, as follows:

On page 5, first paragraph, lines 11-12 -- the phrase "Drive-In's post-trial motion to vacate" is corrected to read "the Killettes' post-trial motion to vacate."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DRIVE-IN MUSIC COMPANY,
INCORPORATED,
Intervenor-Appellant,

v.

RONALD B. KILLETTE; NORTH STATE
MUSIC; RONALD B. KILLETTE, III;
SUN COAST MUSIC; KAREN FAITH
KILLETTE; E. WAYNE PITTMAN,
Defendants-Appellees.

No. 98-2666

E. WAYNE PITTMAN,
Defendant-Appellant,

v.

RONALD B. KILLETTE; NORTH STATE
MUSIC; RONALD B. KILLETTE, III;

SUN COAST MUSIC; KAREN FAITH
KILLETTE,
Defendants-Appellees,

No. 98-2724

DRIVE-IN MUSIC COMPANY,
INCORPORATED,
Intervenor-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Senior District Judge.
(CA-91-8-3-10)

Argued: January 25, 2000

Decided: April 20, 2000

Before WILKINSON, Chief Judge, and
WILLIAMS and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Allen Hyman, LAW OFFICE OF ALLEN HYMAN, Studio City, California, for Appellant. Ira George Greenberg, EDWARDS & ANGELL, L.L.P., New York, New York; Daryl G. Hawkins, LEWIS, BABCOCK & HAWKINS, L.L.P., Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is now the third time these parties have been before us concerning their dispute over the rights to the songs "Girl Watcher," "Boy Watcher," and "Girl Watcher/Boy Watcher" (collectively, the Girl Watcher songs). The district court, in response to our latest instruction in this case, see Killette v. Pittman, 127 F.3d 1099, 1997 WL 657005 (4th Cir. Oct. 22, 1997) (unpublished), entered a final judgment from which the parties now appeal. In this appeal, Drive-In Music Company, Inc. (Drive-In) challenges the district court's order in several respects, including its failure to reflect Drive-In's rights in the songs. E. Wayne Pittman (Pittman) cross-appeals, asserting that the district court improperly failed to include Pittman's proposed decretal paragraph in the order and erred in not requiring the other parties to pro-

2

vide an accounting to Pittman. For the reasons that follow, we affirm the district court's final order.

I.

We have previously set forth the facts surrounding this case in detail, see Killette v. Pittman, 127 F.3d 1099, 1997 WL 657005 (4th Cir. Oct. 22, 1997) (unpublished), and will here provide only a recitation of the essentials. On June 26, 1990, Ronald B. Killette, his family members, North State Music, and Sun Coast Music (collectively, the Killettes), assigned to Drive-In a 50% interest in the Girl Watcher songs (the June 26, 1990 agreement). The following month, Drive-In recorded its newly acquired 50% interest with the Copyright Office of the United States.

Meanwhile, the Killettes were involved in a lawsuit with Pittman in the United States District Court for the District of South Carolina that sought to resolve questions of authorship of the Girl Watcher songs. On August 25, 1992, the Killettes entered into an agreement with Pittman to settle the pending South Carolina litigation (the August 25, 1992 agreement). This agreement provided, inter alia, that the copyrights to the Girl Watcher songs would be amended or reissued to show joint ownership and authorship by Ronald Killette and Pittman.

On September 11, 1992, just weeks after entering into the August 25, 1992 agreement with Pittman, the Killettes assigned to Drive-In what they contended was their remaining 50% interest in the single song "Girl Watcher" as part of an agreement to settle a separate lawsuit in California between the Killettes and Drive-In (the September 11, 1992 agreement). This agreement also gave Drive-In the right to reinstate the California action if it were ever determined that Pittman had any ownership interest in the Girl Watcher songs.

Then, on September 21, 1992, the Killettes filed a motion to set aside their August 25, 1992 agreement with Pittman and to reopen the South Carolina litigation. In an order dated April 29, 1993, the district court denied the Killettes' motion to vacate the August 25, 1992 agreement and granted Pittman's motion to enforce the terms of that

3

agreement (the April 29, 1993 order).**1** The Killettes appealed the April 29, 1993 order to this Court. While the appeal was pending, Drive-In, asserting an interest in the Girl Watcher songs, moved for leave to intervene or, in the alternative, for remand to the district court for consideration of its motion to intervene. On November 5, 1993, we remanded "the case to the district court for consideration of Drive-In Music Co.'s motion to intervene and for restructuring of the court's enforcement order to determine the rights, if any, of Drive-In Music Co. under the terms of the [August 25, 1992] settlement." (J.A. at 97.)

The district court allowed Drive-In to file a complaint-in-intervention, in which Drive-In contended that it was the 100% owner of the copyright to "Girl Watcher" (by virtue of its June 26, 1990 agreement and September 11, 1992 agreement with the Killettes) and the 50% owner of the copyrights to "Boy Watcher" and "Girl Watcher/Boy Watcher" (by virtue of its June 26, 1990 agreement). Drive-In claimed that the August 25, 1992 agreement between the Killettes and Pittman was subject to Drive-In's two agreements with the Killettes. Drive-In also argued that Ronald Killette was the sole author of the Girl Watcher songs and further contended that the district court should cancel two copyrights that Pittman registered in 1982.**2** Finally, Drive-In brought a slander-of-title claim against Pittman. Pittman contested Drive-In's assertions.

Following cross-motions for summary judgment, the district court ruled that Drive-In was the sole owner of the rights to "Girl Watcher." The court determined that the August 25, 1992 agreement did not provide for a present transfer of the copyrights to Pittman because it believed that Pittman had not fulfilled a condition precedent to trigger the Killettes' performance. The court then conducted a jury trial on

_____

**1** On October 13, 1993, Pittman recorded the April 29, 1993 order enforcing the terms of the August 25, 1992 agreement with the Copyright Office. On November 5, 1993, Drive-In recorded the September 11, 1992 agreement with the Copyright Office.

**2** Drive-In alleged that Pittman registered two copyrights for the musical composition "Girl Watcher/Boy Watcher" in 1982 in which he listed himself as the author. Drive-In alleged that these registrations were false or improper because Pittman was attempting to register pre-existing works in his name alone, without reference to prior Killette registrations.

4

Drive-In's claims and, with the consent of the parties, submitted special interrogatories for the jury to answer, including the questions of who authored "Girl Watcher" and whether Drive-In had entered into its June 26, 1990 agreement with the Killettes unaware of Pittman's asserted interest in the Girl Watcher songs. The jury returned an $85,000 verdict for Drive-In on its slander-of-title claim. The jury also determined that Ronald Killette was the author of "Girl Watcher" and that Drive-In entered the June 26, 1990 agreement as "a good faith purchaser for value of the rights of the Killette parties without notice of the claims of E. Wayne Pittman." (J.A. at 106.) In an order dated April 30, 1996, the district court granted the Killettes' post-trial motion to vacate the April 29, 1993 order enforcing the August 25, 1992 agreement, finding that it was no longer equitable to enforce that agreement, and, after denying Pittman's motion for judgment as a matter of law on Drive-In's slander-of-title claim, awarded Drive-In its attorneys' fees and expenses under the Copyright Act (the April 30, 1996 order). The district court denied Drive-In's request to cancel Pittman's two 1982 copyrights and instructed Drive-In that it could submit its request directly to the Copyright Office.

We reversed the district court's ruling vacating its previous order and determined that the Killettes and Pittman were bound by the terms of their August 25, 1992 agreement. See Killette, 1999 WL 657005, at *5. In addition, we held that the August 25, 1992 agreement operated as a present transfer of the rights in the Girl Watcher songs to Pittman and that that agreement took priority over the September 11, 1992 agreement between the Killettes and Drive-In, thereby depriving Drive-In of its claimed status as the 100% owner of the rights to "Girl Watcher." See id. at *6. We further held that the issue of authorship was incorrectly presented to the jury; that because Drive-In had failed to prove damages in its slander-of-title claim against Pittman, the district court erred in denying Pittman's motion for judgment as a matter of law on that claim; and that the district court erred in awarding attorneys' fees to Drive-In as a prevailing party. See id. at *6 n.7, *7, *7 n.8. We then remanded the case to the district court to enter judgment consistent with our opinion. See id. at *7.

On remand, the district court entered a final judgment in which it, without explanation, (1) vacated its April 30, 1996 order; (2) declared

5

that Drive-In would recover nothing from Pittman; (3) awarded Pittman his costs and reasonable attorneys' fees to be paid by Drive-In in an amount to be fixed by the district court upon an appropriate motion by Pittman; and (4) reinstated its April 29, 1993 order, in which it had enforced the August 25, 1992 agreement between Pittman and the Killettes.**3**

Drive-In appeals, claiming that the district court's final order fails to reflect its rights in the Girl Watcher songs that it acquired through the June 26, 1990 agreement. Drive-In also asserts that Pittman should not have received attorneys' fees as a prevailing party, that the order should have included the jury's finding that Drive-In was a good faith purchaser without knowledge of Pittman's claims to the Girl Watcher songs when Drive-In entered into the June 26, 1990 agreement, and that the order should have indicated that the two copyrights that Pittman registered in 1982 were improper. Pittman cross-appeals, asserting that the order should have included a decretal paragraph declaring the August 25, 1992 agreement binding on the parties, and arguing that the district court erred in not requiring an accounting to Pittman from Drive-In and the Killettes.

II.

When we were last confronted with this case, we ended our opinion with the instruction to the district court to "enter judgment consistent with this opinion." Killette v. Pittman, 127 F.3d 1099, 1997 WL 657005, at *7 (4th Cir. Oct. 22, 1997) (unpublished). Under the law of the case doctrine, the district court was required to follow that specific mandate as well as the other rulings in the opinion. See generally 18 Charles Alan Wright et al., Federal Practice & Procedure § 4478, at 792 (1981) (discussing law of the case doctrine and noting that "inferior tribunals are bound to honor the mandate of superior courts"). Our power to review whether the district court's final judgment on remand complied with our mandate is not limited. As the Eighth Circuit explained in Jaramillo v. Burkhart, 59 F.3d 78 (8th Cir. 1995),

_____

**3** The district court also dismissed the action as to all claims against the Killettes and awarded the Killettes costs of the action to be paid by Drive-In. Drive-In does not challenge these aspects of the district court's final judgment.

"[u]nder the law of the case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms." Id. at 80. For the reasons set forth below, we believe that the district court's final judgment is in compliance with the mandate from our last opinion in this case, and we affirm.

A.

Drive-In's principal argument is that the district court's order failed fully to reflect its rights in the Girl Watcher songs. Drive-In asserts that in its June 26, 1990 agreement with the Killettes it received 100% of the renewal rights in the Girl Watcher songs, despite the fact that it only received 50% of the Killettes' interest in the compositions. The language in that June 26, 1990 agreement belies this dubious contention. That agreement provides for the Killettes' transfer to Drive-In of "an undivided one-half (1/2) interest in and to the Musical Compositions, together with a one-half (1/2) interest in the copyrights in each and every one of the Musical Compositions, and all renewals, reissues and extensions thereof." (J.A. in Case No. 96-1827 at 1676 (emphasis added).) This language clearly indicates that Drive-In only received the renewal rights in the 50% interest that it acquired. The language cannot be interpreted to mean that Drive-In also received renewal rights in the 50% interest that the Killettes retained. Such an interpretation would read the word "thereof" right out of the agreement.[4] We, therefore, reject Drive-In's claim that the district court's order should have indicated that Drive-In owned 100% of the renewal rights in the Girl Watcher compositions because Drive-In only received the renewal rights to its 50% interest.

_____

[4] We also note that the September 11, 1992 agreement, in which the Killettes purported to assign their remaining 50% interest in "Girl Watcher" to Drive-In, provides that Drive-In is to receive 100% of the Killettes' interest in the renewals, reissues, and extensions of that song. If Drive-In's contention that it received all 100% of the renewal rights in the Girl Watcher songs through its June 26, 1990 agreement were correct, there would have been no need to include this provision in the September 11, 1992 agreement. We think that the inclusion of that provision further undercuts Drive-In's claim here.

7

We also do not think that the district court erred in failing to spell out the precise interests each party holds in the Girl Watcher compositions. The district court held in its final order that Drive-In was to recover nothing from Pittman and that the court's April 29, 1993 order enforcing the August 25, 1992 agreement between the Killettes and Pittman was reinstated. We believe that these rulings adequately dispose of the questions in the case. The focus of this particular litigation from the beginning has been whether the August 25, 1992 settlement agreement between the Killettes and Pittman should be enforced. Drive-In intervened because it had a competing claim to a portion of the rights in the single "Girl Watcher" composition that seemed to overlap with the rights Pittman acquired through his agreement with the Killettes. In our last opinion in this case, we resolved this dispute in favor of Pittman and declared that "Pittman's claim to the remaining 50% interest in `Girl Watcher' has priority over Drive-In's competing claim." <u>Killette</u>, 1997 WL 657005, at *6. Now, Drive-In essentially asks us to declare what interest each party holds in the Girl Watcher songs. This question has never been part of this case and is not properly before us now. In this respect, we agree with the district court's final order, in which the court recognized that the central issue before it was whether the August 25, 1992 agreement is enforceable in light of Drive-In's claims. As noted above, we held that it is and that Drive-In has failed to show otherwise. **5** <u>See id.</u> We, therefore, affirm the district court's conclusions that the August 25, 1992 agreement between the Killettes and Pittman is enforceable and that Drive-In failed in its attempt to undermine that agreement by pointing to its subsequent September 11, 1992 agreement with the Killettes.

The other conclusions that the district court expressed in its final order follow from this basic understanding of the case. Drive-In failed to demonstrate any reason that the August 25, 1992 agreement should not be enforced. Therefore, Pittman prevailed on the fundamental issue at stake in the litigation, which would entitle the district court, in its discretion, to award him attorneys' fees under the Copyright Act.**6**

_____

**5** We note that questions concerning whether the parties have fulfilled their obligations under the terms of the agreements at issue in this case are not relevant to our holding, and we express no opinion on those questions.

**6** Of course, Pittman also prevailed on Drive-In's slander-of-title claim.

8

See 17 U.S.C.A. § 505 (West 1996); Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503, 506 (4th Cir. 1994) ("We review the decision of the district court with respect to the appropriateness of an award of attorney's fees and costs under § 505 for an abuse of discretion."). We cannot say that the district court abused its discretion by awarding Pittman attorneys' fees in this case.**7**

We reject Drive-In's remaining claims on appeal. Drive-In is correct that our last opinion in this case did not disturb the jury's finding that Drive-In entered the June 26, 1990 agreement with the Killettes without notice of Pittman's claims. We do not believe, however, that the district court erred in failing to include this jury finding in its final judgment because this fact does not have any impact on the issues in this action, the most notable of which is the enforceability of the

_____

**7** We have previously indicated that district courts should consider various factors before awarding a prevailing party attorneys' fees under the Copyright Act. See, e.g., Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503, 506 (4th Cir. 1994) (listing factors). In this case, we do not find the district court's failure to expressly consider these factors to be fatal. The record clearly supports a finding that Drive-In's claims against Pittman were objectively unreasonable. See id. at 505 (noting that one factor to consider is "the objective reasonableness of the legal and factual positions advanced"). Drive-In failed to produce any evidence that it suffered any monetary loss in connection with its slander-of-title claim against Pittman. As we held before, "[b]ecause Drive-In failed to introduce evidence concerning every element of the offense, there was no legally sufficient evidentiary basis for a reasonable jury to find for it on the slander-of-title claim." Killette v. Pittman, 127 F.3d 1099, 1997 WL 657005, at *7 (4th Cir. Oct. 22, 1997) (unpublished). In addition, Drive-In's asserted 100% interest in "Girl Watcher" was similarly objectively unreasonable. Pittman had clearly recorded his interest in the song before Drive-In. All Drive-In had to do was conduct a search to discover that its September 11, 1992 agreement in which it purportedly received the remaining interest in "Girl Watcher" did not take priority over Pittman's interest. See 17 U.S.C.A. § 205(d) (West 1996). Given these facts, we do not believe that the district court abused its discretion in awarding Pittman attorneys' fees simply because it failed to make clear that it considered the factors we discussed in Diamond Star. We also note that we instructed the district court to enter judgment consistent with our previous opinion in this case, and the district court may have reasonably interpreted that instruction to limit its ability to make any relevant findings.

9

August 25, 1992 agreement. To the extent that this finding might be relevant in the future, we expressly recognize its validity, but we do not think it is relevant to this opinion. We also reject Drive-In's claim that the final order should have indicated that Pittman's two 1982 copyright registrations for the musical composition "Girl Watcher/Boy Watcher" were improper. The district court's April 30, 1996 order expressly determined that it was without power to cancel these registrations, and it <u>denied</u> Drive-In's request to do so. Any language in that order suggesting that the registrations might have been improper was immaterial,[8] and the district court was entirely correct not to include any mention of the 1982 registrations in its final judgment.

B.

Pittman's claims on appeal are also unavailing. Pittman argues for the inclusion of a paragraph in the district court's order declaring the August 25, 1992 agreement binding on the parties. The inclusion of such a paragraph would be surplusage. The final order clearly reinstates the district court's April 29, 1993 order in which it held that the terms of the agreement are enforceable. We believe that this language appropriately states the effect of the August 25, 1992 agreement on the parties.

We also decline to grant Pittman's request for an accounting from Drive-In and the Killettes. To require an accounting would indicate that Pittman has satisfied the terms of his agreement with the Killet-

_____

[8] Not only was any such language immaterial given the district court's ultimate ruling to deny Drive-In's request for cancellation, but the apparent basis for that language has been significantly undermined. In its April 30, 1996 order, the district court indicated that Pittman's 1982 copyright registrations for "Girl Watcher/Boy Watcher" might have been improper, but seemed to rest this conclusion on its belief that Pittman had no interest in the compositions and was not an author of the Girl Watcher songs. As we held in our last opinion in this case, however, the issue of authorship was incorrectly presented to the jury, and the August 25, 1992 settlement agreement expressly provides that Pittman is both a joint owner and joint author of the songs. See Killette v. Pittman, 127 F.3d 1099, 1997 WL 657005, at *6, *6 n.7 (4th Cir. Oct. 22, 1997) (unpublished).

10

tes, which is an issue that is not before us (and which, in any event, we could not determine on this record).**9**

III.

In conclusion, we affirm the district court's final order. The district court clearly complied with our instruction at the conclusion of our last opinion in this case to enter judgment consistent with that opinion. This action has never been concerned with establishing each party's precise rights in the Girl Watcher songs. It is much more limited than that. We recognize that the parties continue to have questions concerning the full scope of their rights in the Girl Watcher songs, but for the purposes of this case we decline to consider what those rights might be, other than to reiterate that Pittman's interest acquired in the August 25, 1992 agreement with the Killettes takes priority over Drive-In's interest acquired in its September 11, 1992 agreement with the Killettes, and to make clear that Drive-In did not receive 100% of the renewal rights in the Girl Watcher songs through its June 26, 1990 agreement with the Killettes.**10**

<u>AFFIRMED</u>

_____

**9** We also understand that Pittman has initiated a separate action against Drive-In and the Killettes in which he directly asks for an accounting. While we hesitate to provide anything that could be construed as encouragement to these litigious parties, we expressly note that we do not intend our decision to prevent them from obtaining an accounting (or a determination of other relief consistent with this opinion).

**10** We again note that the jury's finding that Drive-In entered its June 26, 1990 agreement with the Killettes without notice of Pittman's claims regarding the Girl Watcher songs remains valid. We do not think it was necessary, however, for the district court to have included that fact in its final judgment.